MURDOCK, Judge.
On October 24, 2000, Karen Burnett Gilliam, the mother, and James Elmer Gilliam III, the father, were divorced by a judgment of the Etowah Circuit Court based on incompatibility of temperament. The divorce judgment incorporated an agreement of the parties in which the parties agreed, among other things, to joint custody of the only child born of the marriage. At the time of the parties’ divorce, the parties’ daughter was seven years old. Regarding the joint-custody arrangement, the divorce judgment states:
“2. The [father] and [the mother] shall have the joint equally shared care, custody, and control of the minor child of the marriage, [a daughter], born March 19,1993. Joint and shared custody shall mean that each parent shall participate equally in every aspect of the [daughter’s] life; that both parties will have equal say, rights and input in the [daughter’s] life; that each parent will keep the other informed as to all functions and activities in the [daughter’s] life; and that the parents will agree to coordinate and work together to raise the [daughter] in loving homes. One parent may help the other parent with the [daughter] even if the [daughter] is not then in the physical custody of that parent, if the other parent is busy and cannot look after the [daughter] for some reason, that is, to take or pick up the [daughter] from school or functions, various appointments, etc. Cooperating and working with the other parent to raise the [daughter] will not be interpreted as a lack of responsibility or neglect on the part of the other parent, but will be considered working together.
“The physical custody of the [daughter] will be shared equally by the [father] and [the mother] on the following basis:
“a. The [father] and [the mother] will share physical custody of the [daughter]. The [father] will have the [daughter] from Sunday midday until Thursday afternoon during school. During the Summer the [father] will have the [daughter] from Sunday midday until Thursday morning. The moth *1138 er will have the [daughter] beginning on Thursday afternoon until Sunday midday during school. During the Summer the [mother] will have the [daughter] from Thursday morning until Sunday midday. The arrangement will be adjusted periodically as dictated by the work schedule of the parents and the special circumstances of the [daughter],
“b. The [father] and the [mother] will alternate or share all holidays and birthdays fairly and equally. The [daughter] will spend Christmas Eve with the father and Christmas Day with the mother. The Christmas break from school will be shared equally.
“c. The [father] and the [mother] will share Spring Break from school equally.
“d. The [mother] shall have the [daughter] every Mother’s Day and the father shall have the [daughter] every Father’s Day.
“e. The [father] and [the mother] will each get the [daughter] two nonconsecutive weeks each Summer for vacation.”
On November 20, 2000, the parties filed a joint motion to alter or amend the divorce judgment, requesting that the court amend certain provisions in the judgment (namely, provisions regarding the property division and the daughter’s educational expenses) not relevant to the present appeal. On November 21, 2000, the trial court granted the parties’ joint motion and entered a judgment accordingly.
Pursuant to the property division in the divorce judgment, the father was awarded the marital home in Rainbow City and the mother was awarded a house in Ashville. The mother remained in the marital home until shortly after Christmas of 2000, at which time the mother moved into the Ashville house.
On August 29, 2001, the father filed a petition to modify the divorce judgment, seeking “full care, custody and control” of the daughter, or, alternatively, primary physical custody of the daughter. On September 13, 2001, the father filed an “Emergency Amendment to Petition for Modification; Motion for Ex Parte Change of Visitation Exchange Location,” requesting that the court, among other things, order the parties to exchange the daughter in a public place. The father alleged, among other things, that, because a conflict existed between the father and the daughter’s maternal grandparents, the father no longer felt comfortable exchanging the daughter at the grandparents’ house. (The record reveals that, following the parties’ divorce, the mother and the daughter had been spending weekends at the grandparents’ Ashville home and that the father had been picking up the daughter at the grandparents’ home on Sundays.) On September 13, 2001 (the same date the father filed the emergency amendment to his petition to modify the divorce judgment), the court entered an order requiring the parties to exchange the daughter “at the fountain inside the Gadsden Mall, in the event the visitation exchanges are not to take place at school.” The order also restrained “all parties participating in the visitation exchange and all parties present at the visitation exchange ... from harassing, annoying, alarming, fighting or otherwise arguing with one another in the presence of the [daughter] about the opposing party.”
On September 18, 2001, the mother answered the petition to modify and counterclaimed, seeking, among other things, primary physical custody of the daughter. On that same date, the mother filed a petition for a temporary restraining order, alleging, among other things, that the father had been “harassing the [mother] on a regular basis via telephone on her wire *1139 less phone and at her place of employment.” The mother sought a restraining order to prevent the father from telephoning her on her wireless telephone or at her place of employment unless there was a specific emergency concerning the daughter. The mother also sought to restrain the father from coming to the mother’s residence unless specifically requested by the mother.
On October 10, 2001, the court entered an order restraining the parties from “harassing, molesting, or otherwise contacting the other party for any reason.” In that same order, the court appointed Dr. David Wilson, Ph.D., of Gadsden Psychological Services, to interview the daughter, the mother, and the father “for purposes of giving testimony to this Court regarding the best interests of the [daughter].”
The trial court held ore tenus proceedings on February 8, 2002, and March 18, 2002. On March 27, 2002, the father filed a “Notice To Court,” alleging, among other things, that because the father had the daughter four nights a week and the mother had the daughter three nights a week, the court should apply the “Ex parte McLendon [, 455 So.2d 868 (Ala.1984),] custody standard of materially promoting the best interest of the minor child of the parties, rather than the Ex parte Couch[, 521 So.2d 987 (Ala.1988),] best interest standard” to the mother’s request to modify custody of the daughter. On that same date, the father filed a “Motion to Impute Minimum Wage to the [Mother]; Child Support Calculations,” requesting that the court impute an annual income of $40,000 to the mother in computing the mother’s child-support obligation under Rule 82, Ala. R. Jud. Admin.
On April 2, 2002, the mother filed an “[A]nswer to [the Father’s] Notice To Court,” alleging, among other things, that the court should utilize the “best interests of the child” standard in determining custody of the daughter. The mother also requested that the court grant her “full care, custody, and control” of the daughter. On that same date, the mother filed a “[R]esponse to the [Father’s] Motion to Impute Minimum Wage to the [Mother],” once again requesting that the court grant her “full care, custody, and control” of the daughter.
On April 12, 2002, the trial court entered a judgment that, among other things, granted the parties continued joint legal custody of the daughter and awarded the father primary physical custody. The court granted the mother specified visitation rights:
“3. For the months beginning August, 2002 through May of 2003 and each year thereafter, the mother will have visitation with [the daughter] every other weekend, from 5:00 p.m. on Friday until 5:00 p.m. on Sunday....
[[Image here]]
“5. For the months of June and July of 2002 and each and every year thereafter, the [mother’s] visitation will be from the 1st Friday in June at 5:00 p.m. until Sunday at 5:00 p.m. sixteen (16) days later (except when Father’s Day falls on the 2nd Sunday, the [mother’s] visitation will end at 9:00 a.m. on Father’s Day) and from the 2nd Friday in July at 5:00 p.m. until Sunday at 5:00 p.m. sixteen (16) days later. It is the intention of this Court that the [father] shall be allowed to have the [daughter] with him on Father’s Day of each and every year. These visitations periods in June and July will be the only visitation the [mother] will have with the [daughter] during those two (2) months of each and every year.”
The trial court also granted the mother visitation during the Christmas holidays, on alternating spring school holidays, on *1140 Mother’s Day, and for a minimum of three hours on the daughter’s birthday. The trial court ordered that, for purposes of visitation, the parties were to continue to exchange the daughter at the Gadsden Mall.
Regarding child support, the trial court found:
“2. [The father’s] request to impute minimum wage or an income of $40,000 per year to the [mother] is DENIED. The Court finds the [mother] is unemployed and has been since October, 2001. The Court is not going to order child support at this time. The [mother] is ORDERED to submit an updated child support income affidavit to opposing counsel immediately after [the mother] has been employed for thirty (30) days and, at that time, the Court will compute child support per the Guidelines.”
(Capitalization and emphasis original.)
The mother filed a motion to alter, amend, or vacate the judgment, seeking reconsideration of the trial court’s failure to grant her primary physical custody of the daughter. The father also filed a motion to alter, amend, or vacate the judgment, seeking a “date certain” for the mother’s child-support payments to begin. The trial court held a hearing on the post-judgment motions; no additional evidence was submitted at the hearing. At the hearing, in addition to the mother’s request for primary physical custody, the mother alternatively requested additional visitation. Both postjudgment motions were denied. The mother appeals, and the father cross-appeals.

The Mother’s Appeal

“When this Court reviews a trial court’s child-custody determination that was based upon evidence presented ore tenus, we presume the trial court’s decision is correct: ‘ “A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong....” ’ Ex parte Perkins, 646 So.2d 46, 47 (Ala.1994), quoting Phillips v. Phillips, 622 So.2d 410, 412 (Ala.Civ.App.1993) (citations omitted). This presumption is based on the trial court’s unique position to directly observe the witnesses and to assess their demeanor and credibility. This opportunity to observe witnesses is especially important in child-custody cases. ‘In child custody cases especially, the perception of an attentive trial judge is of great importance.’ Williams v. Williams, 402 So.2d 1029, 1032 (Ala.Civ.App.1981). In regard to custody determinations, this Court has also stated: ‘It is also well established that in the absence of specific findings of fact, appellate courts will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous.’ Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala.1996).”
Ex parte Fann, 810 So.2d 631, 633 (Ala.2001).
Where there has been no prior custody determination and neither parent has voluntarily relinquished custody of the child, the “best interests” of the child is controlling; the parties stand on “equal footing” and no presumption inures to the benefit of either parent. Durham v. Sisk, 628 So.2d 873, 874 (Ala.Civ.App.1993) (citing Hall v. Hall, 571 So.2d 1176 (Ala.Civ.App.1990)). “ ‘ “The trial court’s overriding consideration is the children’s best interests and welfare.” ’ ” Smith v. Smith, 727 So.2d 113, 114 (Ala.Civ.App.1998) (quoting Collier v. Collier, 698 So.2d 150, 151 (Ala.Civ.App.1997), quoting in turn *1141 Graham v. Graham, 640 So.2d 963, 964 (Ala.Civ.App.1994)).
In considering the best interests and welfare of the child, the court must consider the individual facts of each case:
“The sex and age of the children are indeed very important considerations; however, the court must go beyond these to consider the characteristics and needs of each child, including their emotional, social, moral, material and educational needs; the respective home environments offered by the parties; the characteristics of those seeking custody, including age, character, stability, mental and physical health; the capacity and interest of each parent to provide for the emotional, social, moral, material and educational needs of the children; the interpersonal relationship between each child and each parent; the interpersonal relationship between the children; the effect on the child of disrupting or continuing an existing custodial status; the preference of each child, if the child is of sufficient age and maturity; the report and recommendation of any expert witnesses or other independent investigator; available alternatives; and any other relevant matter the evidence may disclose.”
Ex parte Devine, 398 So.2d 686, 696-97 (Ala.1981).
The mother contends that the trial court erred in granting the father primary physical custody of the daughter because, she says, the evidence does not support a modification of the parties’ joint custody of the daughter. In support of her argument, the mother urges this court to adopt the reasoning of Judge Yates’s dissenting opinion in Durham, 628 So.2d 873. In Durham, the parties were divorced in April 1991; pursuant to a separation agreement that was incorporated into the divorce judgment, the parties entered into a joint custody arrangement regarding their two minor children. Id. at 874. In November 1991, the mother filed a “petition to modify” custody, alleging a material and substantial change in circumstances and requesting primary custody of the parties’ minor children. Id. The father answered and counterclaimed, also requesting custody of the minor children. Id. After ore tenus proceedings, the trial court awarded the mother primary custody of the children, and the father appealed. Id. This court affirmed the trial court’s judgment. Id. Judge Yates stated in her dissenting opinion that she would “reverse the trial court in this instance, reinstating the agreement of the parties incorporated into the final decree of divorce, just seven months prior to the mother’s petition to modify,” because, she reasoned, “the particular facts in [that] case [did] not reveal an ‘unworkable’ situation.” Id. at 876 (Yates, J., dissenting). The majority of this court in Durham, however, stated:
“The consequences of delaying the opportunity for correction of child custody problems could include preventable damage to a child’s well-being, physically, emotionally, or otherwise. As such, we determine that it would be a grave injustice to allow the consideration of custody petitions only after the passage of a time certain....
“... While the parties may have originally believed that the joint custody arrangement would be in the best interests of the children, upon proper petition, the trial court determined otherwise.”
Durham, 628 So.2d at 875-76.
The facts in Durham are distinguishable from the facts of case before us. In the present case, both parents testified that the joint-custody arrangement was no longer feasible. The record reveals that the parents had experienced a complete *1142 breakdown in their ability to communicate and to get along with one another. The parents were unable to agree on such matters as who should be the daughter’s pediatrician, where the daughter should attend church, and what extracurricular activities the daughter should participate in.
Regarding the joint-custody arrangement, the mother testified on cross-examination:
“Q. [The daughter] needs to be with one parent the majority of the time, isn’t that true?
“A. I feel so now.
“Q. And you think that should be you?
“A. Yes, Ido.
[[Image here]]
“Q. Well, you agree with me that joint custody is not feasible in this case, is it?
“A. True.
“Q. Because it would take y’all getting along in order to have a joint custody order?
“A. Yes.
“Q. And that this Judge is going to have to put someone in charge of this child; is that true?
“A. Yes. Yes.”
Thus, the trial court was required to make a custody determination.
The record indicates that both parents are fit to have custody of the daughter and that both parents have demonstrated that they would be willing and able to care for the daughter’s needs. The record reveals that the father and the daughter, both being “outdoor people,” have a close relationship and have a lot of shared interests. Dr. Wilson, the court-appointed psychologist, stated in his report that was admitted into evidence and during his testimony at trial that the father and the daughter would benefit from spending more time together. We note that the father’s job as an aircraft mechanic has flexible work hours and allows him to perform some of his job duties at home. This court cannot say, given the totality of the evidence presented in the record, that the trial court abused its discretion in determining that the best interests of the daughter would be served by awarding primary physical custody of the daughter to the father or that the trial court’s award of primary physical custody to the father was unsupported by the evidence so as to be plainly and palpably wrong. Ex parte Farm, 810 So.2d at 632.
Next, the mother contends that the trial court erred in determining her visitation rights. “The determination of proper visitation ... is within the sound discretion of the trial court, and that court’s determination should not be reversed by an appellate court absent a showing of an abuse of discretion.” Ex parte Bland, 796 So.2d 340, 343 (Ala.2000). “The primary consideration in setting visitation rights is the best interest of the child. Each child visitation case must be decided on its own facts and circumstances.” DuBois v. DuBois, 714 So.2d 308, 309 (Ala.Civ.App.1998) (citation omitted).
The mother contends that the visitation schedule is contradictory to Dr. Wilson’s testimony because, she claims, Dr. Wilson testified that “it is in the daughter’s best interests to have contact with both parents on the weekend and during the week.” The mother relies on the following excerpt from Dr. Wilson’s testimony on cross-examination in support of her contention:
“Q. And I’m looking on page four, and the summary that you list out, you state that it does appear that it would be in the child’s best interests for her to be able to spend more time with the father, *1143 and this will be time when they can engage in shared interests that they have.
“You certainly did not put in there — I didn’t see anywhere in your assessment that you said that [the father] should have custody versus [the mother] having custody.
“A. That’s — That’s the ultimate issue that the Court decides.
“Q. I understand. But you talked about spending more time with the father because of their shared interests?
“A. That’s correct.
“Q. And having off time and off-vacation time or time on weekends when they would have time together, correct?
“A. Yeah. The weekend time. That’s not to say they shouldn’t have time during the week. [The daughter] also is positive about that. Positive about his involvement at school. Positive about him doing things with her during the week.
“Q. And, of course, [the mother’s] very active in the [daughter’s] — with school during the week also, isn’t she?
“A. Yes. Certainly seemed to be.
“Q. So, would it be fair, then, to say also that [the mother] should have time with the [daughter] during the week, during the school time?
“A. That’s — Seemed to be positive for [the mother] and the [daughter.]”
After reviewing Dr. Wilson’s testimony, we conclude that the mother misrepresented Dr. Wilson’s testimony to some extent — clearly his testimony did not explicitly recommend that it would be in the daughter’s best interests for the trial court to grant the mother visitation during the week.
We also note that the mother fails to point out that neither parent wanted the other parent to be granted visitation during the week if he or she was granted primary physical custody of the daughter. Given the totality of the evidence presented, we conclude that the trial court did not abuse its discretion by failing to award the mother more visitation during the week. Ex parte Bland, 796 So.2d at 343.
The mother also contends that the June visitation schedule is self-contradictory. The mother claims that the language used in the judgment effectively cuts her June visitation period short by seven days in the years 2002 and 2003 because, she says, the judgment essentially states that her visitation period ends at 9:00 a.m. on Father’s Day during the years in which Father’s Day falls on the “2nd Sunday.”
The relevant portion of the judgment states:
“5. For the months of June ... of 2002 and each and every year thereafter, the [mother’s] visitation will be from the 1st Friday in June at 5:00 p.m. until Sunday at 5:00 p.m. sixteen (16) days later (except when Father’s Day falls on the 2nd Sunday, the [mother’s] visitation will end at 9:00 a.m. on Father’s Day).... It is the intention of this Court that the [father] shall be allowed to have the [daughter] with him on Father’s Day of each and every year.”
It appears to us that the phrase “2nd Sunday” refers to the second Sunday of the mother’s June visitation period and not to the second Sunday in June. Father’s Day never falls on the second Sunday in June; rather, it always falls on the third Sunday in June. Father’s Day is defined as “the third Sunday in June appointed for the honoring of fathers.” Merriam-Webster’s Collegiate Dictionary, 456 (11th ed.2003). Based on our calculations, Father’s Day will fall on the second Sunday of the mother’s June visitation period for two consecutive years out of every seven *1144 years, effectively cutting the mother’s visitation period short by one week in those two years.
We also note that the trial court’s judgment is clear that the father is to have visitation with the daughter on Father’s Day and that the mother is to have visitation with the daughter on Mother’s Day. Regarding Mother’s Day, the trial court’s judgment states:
“6. If Mother’s Day falls on the weekend the [father] is due to have the [daughter] with him, the [mother] shall have visitation with the [daughter] from 9:00 a.m. to 5:00 p.m. on Mother’s Day in addition to her regular every other weekend visitation. It is the intention of this court that the mother shall have the daughter on Mother’s Day of each and every year.”
However, the June visitation schedule does not contain similar language to ensure that the daughter spends Father’s Day with the father. Based on our calculations, out of every seven years, Father’s Day will fall on the second Sunday of the mother’s June visitation period for two consecutive years and on the third Sunday of the visitation period for five consecutive years. We therefore conclude that the trial court’s June visitation schedule is inconsistent; we reverse that portion of the trial court’s judgment, and remand the cause for the trial court to reconcile those inconsistencies so that the visitation awarded is consistent with this opinion and with the trial court’s intention of granting the mother approximately 16 days of visitation during June each year and with its stated intent that the daughter spend Father’s Day with the father.

The Father’s Cross-Appeal

The father contends that the trial court erred in failing to order the mother to begin paying child support by a “date certain.” The father argues that, pursuant to Rule 32(B)(5), Ala. R. Jud. Admin., the trial court is required to impute income to a parent and to compute his or her child-support obligation based on that parent’s potential income if the trial court finds that the parent is “voluntarily unemployed or underemployed.”
“The award of child support is a matter vested within the sound discretion of the trial court. When evidence regarding this issue is presented ore tenus, the trial court’s judgment is presumed correct, and we will not reverse it on appeal unless it is plainly and palpably wrong or unjust.”
State ex rel. Dunnavant v. Dunnavant, 676 So.2d 1329, 1331 (Ala.Civ.App.1996) (citation omitted). Furthermore, the determination of whether a parent is voluntarily underemployed or unemployed is discretionary with the trial court. Id. (citing Griggs v. Griggs, 638 So.2d 916 (Ala.Civ.App.1994)).
In the present case, the trial court did not find that the mother was “voluntarily” unemployed or underemployed; rather, it found that the mother had been “unemployed since October 2001” and the court did “not ... order child support at this time.” (Emphasis in the original.) The record reflects that the mother had been a stay-at-home mother until April 2000, approximately four months before the father filed for a divorce. The record further reflects that the mother was unemployed because of the cutbacks relating to the September 11, 2001, terrorist attacks[1] and that she was actively seeking work in *1145 the field of commercial interior design, aspiring to earn $40,000 annually. Because the record supports a finding that the mother was not voluntarily unemployed or underemployed, the trial court was not required to impute income to the mother under Rule 32(B)(5). See Dunnavant, 676 So.2d at 1331 (“To impute income to the father [in that case] would require a finding that he was voluntarily underemployed, a finding that the trial court did not make and that the evidence did not support.”).

Conclusion

That portion of the trial court’s judgment regarding the June visitation schedule is reversed, and the cause is remanded for the trial court to reconcile the inconsistencies regarding the June visitation consistent with this opinion and with the trial court’s intent of granting the mother approximately 16 days of visitation during June and with its stated intent that the daughter spend Father’s Day with the father. The remainder of the trial court’s judgment is due to be affirmed.
The requests of the mother and the father for an award of an attorney fee on appeal are denied.
APPEAL — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
CROSS-APPEAL — AFFIRMED.
CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.
YATES, P.J., concurs in the result.

. On September 11, 2001, two airplanes were hijacked by terrorists and flown into the World Trade Center in New York City; another airplane was hijacked and flown into the Pentagon building in Washington, D.C.; and *1145 a fourth hijacked airplane crashed into a field in Pennsylvania.