THOMPSON, Presiding Judge.
P.S. (“the mother”) appeals dependency orders awarding custody of her three children to M.S. (“the maternal grandfather”).
On April 22, 2011, the maternal grandfather filed dependency petitions alleging that the mother was incarcerated and seeking custody of the mother’s three children. The maternal grandfather testified during the hearing in this matter that he filed those petitions at the urging of a Department of Human Resources (“DHR”) social worker in order to prevent the children from being placed in foster care during the mother’s incarceration. Also on April 22, 2011, the juvenile court entered orders placing the children in the custody of the maternal grandfather. Each of those orders specified that the mother receive supervised visitation, that she submit to a psychological evaluation, and that she cooperate with services offered by DHR.
The juvenile court conducted an ore ten-us dependency hearing. On March 16, 2012, the juvenile court entered orders finding each of the children dependent and awarding custody of them to the maternal grandfather. The mother timely appealed.
Initially, we note that the maternal grandfather appeared pro se before the juvenile court. During the dependency hearing, the maternal grandfather indicated repeatedly that he did not know how to proceed in the dependency action and that he was having difficulty questioning the mother because he was unfamiliar with the process. The record contains no indication that the maternal grandfather requested the appointment of an attorney to represent him, nor does it reflect that the juvenile court informed him of his right to appointed counsel if he could not afford an attorney. See § 12-15-305, Ala.Code 1975 (an attorney may be appointed to represent an indigent petitioner in a dependency action, and a child’s legal custodian is entitled to appointed counsel if he or she is unable to afford an attorney). The juvenile court attempted to assist the maternal grandfather to some extent, and the evidence from the dependency hearing indicates the following.
When the children were placed in the maternal grandfather’s custody, the mother, who was at the time living with the children in Dothan, had been arrested on charges of child endangerment and eluding law enforcement. It is undisputed that, at the time of the dependency hearing, the mother was no longer incarcerated. The mother testified that the charges had been “taken care of’ and that she had paid a fine and was on probation.
After the children were placed in the maternal grandfather’s custody, DHR offered the mother reunification services, including a psychological evaluation, counsel *230 ing, and services through FOCUS.[1] The mother testified that she saw a Dr. Lopez at a DHR-recommended mental-health facility for approximately 10 to 15 minutes and that he did not perform any testing on her. The mother stated that she believed that visit with Dr. Lopez satisfied the requirement that she obtain a psychological evaluation. The mother stated that Dr. Lopez did not recommend that she take any medication and that he instead referred her to a counselor. According to the mother, she met with the counselor four times before she moved to Old Town, Florida, in mid to late January 2012.
The mother testified that she had been on the waiting list for FOCUS and had been told in January 2012 that she was the next on the list to receive services. However, the mother admitted that she chose to move to Florida rather than wait to participate in those reunification services.
The mother testified that a DHR social worker advised her to move closer to family members. The mother testified that she moved to Florida to live with her mother so that the maternal grandmother could assist her with the children. The mother presented evidence regarding the adequacy of the maternal grandmother’s home for the children. However, at the dependency hearing, the mother testified that she did not intend to live with the maternal grandmother for long and that she was seeking her own residence.
The maternal grandfather testified that the mother had mental-health issues and that she was unemployed. The maternal grandfather was unable to elaborate on his allegations regarding the mother’s mental illness, although he did state that the mother had informed him that she had bipolar disorder. The maternal grandfather stated that the children were a “handful” and that he believed the mother needed assistance with taking care of all three children. The maternal grandfather also testified that, when he took custody of the children, the oldest child was accustomed to taking care of the youngest child and that the oldest child told him she had to “do everything” to take care of the youngest child.
The maternal grandfather presented evidence indicating that he had divorced the maternal grandmother when the mother was very young and that he had received custody of the mother at that time because of conduct of the maternal grandmother. The maternal grandfather also testified that the maternal grandmother had mental-health issues and that she had been committed to a treatment facility at some point in the past.
The maternal grandfather also testified that the mother had not visited the children often while they were in his custody. He stated that he had not known the mother’s whereabouts in the two months before the March 15, 2012, dependency hearing and that she would not provide the maternal grandfather her telephone number. The maternal grandfather stated that the mother had last visited the children at Christmas. The maternal grandfather testified that, before the Christmas visitation, the mother had last visited the children three to four months earlier. The maternal grandfather also stated that the mother did not bring the children any gifts during the Christmas visit. The mother testified that she had not visited the children more regularly because she was living in Florida and she was concerned about the reliability of her vehicle.
According to the maternal grandfather, the mother had called the children regular *231 ly when they were first placed in his home, but, he stated, the frequency of those calls had greatly diminished after a period and that the mother eventually called only once every two to three weeks. However, the maternal grandfather testified, the frequency of the mother’s telephone calls to the children increased significantly in the weeks before the dependency hearing. The mother’s testimony supports the maternal grandfather’s testimony that the frequency and regularity of those telephone calls had greatly diminished; she stated that she used to call the children every day but that, later, she called only once a week.
The mother was not employed at the time of the dependency hearing, but she stated that she was looking for a job. The mother receives Social Security disability benefits, although she insisted at the dependency hearing that she did not know the reason she began receiving those benefits. The mother denied telling the maternal grandfather that she was receiving those disability benefits because she had bipolar disorder.
The maternal grandfather also expressed concern that the mother would again take the children to Mexico to live. The record contains little evidence regarding an incident in which the mother took the children to Mexico and returned to the United States without them. The maternal grandfather testified that he “fought hard” to obtain the return of the children from Mexico after they had been there for a period.
The mother first argues on appeal that the evidence did not support a finding that the children are dependent.
“‘Our standard of review of dependency determinations is well settled.
“ ‘ “A finding of dependency must be supported by clear and convincing evidence. § 12 — 15—65(f)[, Ala.Code 1975][3]; M.M.S. v. D.W., 735 So.2d 1230, 1233 (Ala.Civ.App.1999). However, matters of dependency are within the sound discretion of the trial court, and a trial court’s ruling on a dependency action in which evidence is presented ore tenus will not be reversed absent a showing that the ruling was plainly and palpably wrong. R.G. v. Calhoun County Dep’t of Human Res., 716 So.2d 219 (Ala.Civ.App.1998); G.C. v. G.D., 712 So.2d 1091 (Ala.Civ.App.1997); and J.M. v. State Dep’t of Human Res., 686 So.2d 1253 (Ala.Civ.App.1996).”
“ ‘J.S.M. v. P.J., 902 So.2d 89, 95 (Ala.Civ.App.2004).’
[[Image here]]
J.L. v. W.E., 64 So.3d 631, 634 (Ala.Civ.App.2010) (quoting L.A.C. v. T.S.C., 8 So.3d 322, 326-27 (Ala.Civ.App.2008)).
The mother is correct that the reason cited in the initial dependency petition for declaring the children dependent was her incarceration and that, at the time of the dependency hearing, she was no longer incarcerated. Rather, at that time, the mother was on probation related to the charges on which she had been incarcerated. However, we conclude that other evidence supported the juvenile court’s determination that the children were dependent.
The mother acknowledged some manner of mental-health history, but she denied telling the maternal grandfather that she had bipolar disorder. The mother denied knowing why she receives Social Security disability benefits. Further, she claimed to be unaware that in seeing Dr. Lopez for *232 what the children’s guardian ad litem characterized as a “medication check,” she was not complying with the requirement that she submit to a psychological evaluation.
Also, at approximately the same time she could have been offered reunification services through FOCUS, the mother instead elected to move to another state where DHR could not provide reunification services or assess her progress in completing those services. That move also meant that the mother was farther away from the children, and it made the possibility of visiting them more difficult.[2]
The record indicates that the mother at one point left all three children in Mexico and that the maternal grandfather was instrumental in securing their return to the United States. Although that incident did not serve as the basis for the current dependency action, we note that the children were placed in the maternal grandfather’s custody as a result of the mother’s being arrested on child-endangerment charges, among others; the details of those charges are not set forth in the record on appeal. Further, the evidence presented by the maternal grandfather indicates that the mother visited the children or called them only infrequently during the 11-month period they resided with him after the dependency petitions were filed. The mother testified that she could not visit the children more frequently from Florida because she did not have the financial ability to do so. However, the mother moved to Florida in January 2012, only two months before the dependency hearing. The evidence indicates that the mother’s visits were infrequent before that move. The mother admitted that she elected to move to Florida rather than stay in Alabama and receive reunification services from DHR. Thus, from the foregoing, the juvenile court could have concluded that the mother was unwilling or unable to properly discharge her responsibilities to the children or that the children were without a parent willing and able to provide for their care. See § 12-15-102(8), Ala.Code 1975 (defining the term “dependent child”).
Further, the evidence also indicates that the mother has mental-health issues. She denied understanding that a 10-15 minute consultation with a doctor did not constitute the psychological examination that DHR requested and to which the juvenile court had ordered her to submit. In addition, the mother denied that she knew why she received Social Security disability benefits. Those aspects of the mother’s testimony could have caused the juvenile court to question the mother’s credibility. This court does not have the same advantage as the juvenile court, which was in the best position to observe the witnesses and assess their demeanor and credibility as they testified. J.S.M. v. P.J., 902 So.2d 89, 96 (Ala.Civ.App.2004). “ ‘[Bjecause the trial court has the advantage of observing the witnesses’ demeanor and has a superior opportunity to assess their credibility, this Court cannot alter the trial court’s judgment unless it is so unsupported by the evidence as to be clearly and palpably wrong.’ ” Ex parte Fann, 810 So.2d 631, 636 (Ala.2001) (quoting Ex parte D.W.W., 717 So.2d 793, 795 (Ala.1998)).
In her brief on appeal, the mother focuses on the maternal grandfather’s characterization of her as a “good mother.” However, after making that statement, the *233 maternal grandfather also stated that the mother needed help parenting the children. The maternal grandfather testified that he loved the mother and wanted her to have the children. However, he pleaded with the court not to return all three children to the mother at one time because he did not believe she could, even with the assistance of the maternal grandmother, properly care for the children.[3] The substance and tone of his testimony can be summarized by his testimony that “[s]he’s my daughter. She just — she just don’t have the mother instinct. She needs help to become a mother with this many children.” As mentioned earlier, the mother moved to Florida before she could take advantage of the reunification services offered by DHR. Given the totality of the evidence in the record on appeal, we cannot agree with the mother that the juvenile court’s determination that the children were dependent was not supported by the evidence.
The mother also argues on appeal that the juvenile court erred in failing to award her visitation. We agree. The mother cites authority for the proposition that it is error for a juvenile court to leave visitation to the discretion of the party to whom custody of a dependent child is awarded. P.D. v. S.S., 67 So.3d 128, 135-36 (Ala.Civ.App.2011); A.M.B. v. R.B.B., 4 So.3d 468, 471-72 (Ala.Civ.App.2007). However, in this case, the juvenile court did not award the mother any visitation.
Even after children have been declared dependent, the children’s parent retains certain “residual rights,” including, among others, the right to visitation with the child. § 12-15-1(24), Ala.Code 1975. “This court has repeatedly stated that the trial court’s only parameter [for awarding visitation to the parent of a dependent child] is the best interests and welfare of the child.” Floyd v. Alabama Dep’t of Human Res., 550 So.2d 980, 981 (Ala.Civ.App.1988).
“In awarding visitation rights relating to the disposition of a ‘dependent child’ pursuant to § 12-15-71 (a) [now § 12-15-314, Ala.Code 1975], the trial court is guided by the ‘best interests of the child’ standard. See § 12-15-71(a)(4) (Tf a child is found to be dependent, the court may make any of the following orders of disposition to protect the welfare of the child: ... (4) Make any ... order as the court in its discretion shall deem to be for the welfare and best interests of the child.’).
“ ‘ “ ‘The determination of proper visitation ... is within the sound discretion of the trial court, and that court’s determination should not be reversed absent a showing of an abuse of discretion.’ Ex parte Bland, 796 So.2d 340 (Ala.2000). ‘[C]ases in Alabama have consistently held that the primary consideration in setting visitation rights is the best interests and welfare of the child. Furthermore, each child visitation case must be decided on its own facts and circumstances.’ Fanning v. Fanning, 504 So.2d 737, 739 (Ala.Civ.App.1987) (citations omitted). ‘When the issue of visitation is determined after oral proceedings, the trial court’s determination of the issue will not be disturbed absent an abuse of discretion or a showing that it is plainly in error. Andrews v. Andrews, 520 So.2d 512 (Ala.Civ.App.1987).’ Dominick v. Dominick, 622 So.2d 402, 403 (Ala.Civ.App.1993).” ’ ”
*234 K.B. v. Cleburne Cnty. Dep’t of Human Res., 897 So.2d 379, 387-88 (Ala.Civ.App.2004) (quoting K.L.R. v. L.C.R., 854 So.2d 124, 132 (Ala.Civ.App.2003), quoting in turn K.L.U. v. M.C., 809 So.2d 837, 840-41 (Ala.Civ.App.2001)).
In this case, there is no evidence in the record on appeal indicating that not awarding the mother visitation would serve the children’s best interests. In fact, the maternal grandfather advocated a summer visitation period for one or more of the children to enable the mother to acclimate to caring for the children when they are returned to her care. Accordingly, we conclude that the juvenile court erred in failing to award the mother visitation with the children. We reverse the juvenile court’s judgment insofar as it failed to award the mother visitation, and we remand the cause for the entry of a judgment consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
PITTMAN, BRYAN, THOMAS, and MOORE, JJ., concur.

. The record does not explain the exact services provided by FOCUS, but it is clear that that agency provides some sort of in-home reunification services.

“3 The requirement that a finding of dependency must be supported by clear and convincing evidence before the dis-positional phase of a dependency proceeding is now codified at § 12-15-311(a), Ala.Code 1975.”

. The mother had lived in Dothan. The maternal grandfather, with whom the children now reside, lives in Marietta, Georgia. We take judicial notice that Dothan is 220 miles from Marietta, Georgia. Old Town, Florida, where the mother now resides, is 220 miles from Dothan, but it is 345 miles from Marietta, Georgia.

. The maternal grandfather proposed returning the children to the mother’s custody one at a time.