PER CURIAM.
H.H.J. (“the father”) and K.T.J. (“the mother”) were married on September 28, 1986. One child, H.R.J. (“the child”), was born of the parties’ marriage. The father engaged in an extramarital relationship *38 with C.E.C., who gave birth to the father’s two younger children (“the half siblings”). The existence of the father’s relationship with C.E.C. and of the half siblings was unknown to the mother and to the child for a number of years. The mother eventually discovered the father’s relationship with C.E.C., and, as a result, the parties were divorced pursuant to a November 9, 2009, judgment (“the divorce judgment”) of the trial court.
Among other things not pertinent to this appeal, the divorce judgment awarded the parties joint legal and physical custody of the child. In addition, the trial court included in the divorce judgment the following restriction on the father’s custodial periods with the child:
“The [father] is strictly enjoined from having any contact with or being in the presence of [C.E.C.] ... while [the child] is in his custodial care. The [father] should pay special attention to this paragraph as a violation of the same would constitute a material change in circumstances in the eyes of this court. This court is firmly convinced that contact with [C.E.C.] is not presently in the best interest of [the child] and in fact would be quite detrimental to the emotional well being of [the child].”
The father married C.E.C. (hereinafter referred to as “the second wife”) in December 2010. On January 26, 2011, the mother filed a pleading seeking to modify custody and to have the father held in contempt. As the basis for her claim seeking an award of primary custody of the child, the mother asserted, among other things, that the father’s marriage to the second wife and his alleged failure to visit the child since January 2010 constituted a material change of circumstances warranting a custody modification. The contempt claims pertained to certain support requirements for the child. The father answered the mother’s pleading on February 25, 2011.
The mother filed a motion seeking a hearing on pendente lite issues on March 8, 2011. The trial court conducted an evi-dentiary hearing on the pendente lite issues on April 18, 2011. On May 31, 2011, the trial court entered an order awarding the mother pendente lite custody of the child and awarding the father alternating weekend visitation at the father’s home. In that pendente lite order, the trial court again specifically included the requirement that the child “shall not be in the presence of [the second wife]” during the father’s visitation. Furthermore, the pendente lite order required the mother to post bond in the amount of $5,000. The trial court warned the mother that if she violated any provisions of the pendente lite order or of the original divorce judgment, she could be held in contempt and could forfeit the $5,000 bond. That portion of the pendente lite order requiring the mother to post a bond was entered in response to the trial court’s determination that the mother had “in the past been detrimental to the reestablishment of’ the relationship between the father and the child.[1]
The trial court conducted a hearing on the merits on November 3, 2011. Although the father had not filed a counterclaim seeking to modify the provision of the divorce judgment prohibiting the child *39 from being in the presence of the second wife, that issue was tried by the express consent of the parties. See Rule 15(b), Ala. R. Civ. P. (“When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.”).
In its November 21, 2011, modification judgment, the trial court awarded the mother primary physical custody of the child and awarded the father a standard schedule of alternating weekend visitation. The judgment included a provision specifying that after June 17, 2012, i.e., the child’s 16th birthday, visitation would be at the discretion of the child. In addition, the November 21, 2011, modification judgment specified:
“3. It is further ORDERED, ADJUDGED AND DECREED that during the visitation period with the [father], ... [the child] shall at no time be allowed to be in the presence of [the second wife]. [The child] and [the child] alone is the only one allowed, at his desire, to deviate from this paragraph. All other provisions of this Court’s final judgment of divorce on this issue shall remain in full force and effect.”
(Capitalization in original.) The father filed a postjudgment motion, which the trial court denied. The father filed a timely notice of appeal to this court.
The record on appeal reveals the following pertinent facts. During the modification proceeding, the parties agreed that the mother would receive primary physical custody of the child, and they litigated the issues of child support and the father’s visitation with the child. Neither party appealed as to the support issues determined by the trial court, and, therefore, we omit any discussion of those issues. The parties’ testimony at the final hearing on the issue of visitation pertained to visitations after the April 18, 2011, pendente lite hearing. The transcript of the evidence from the pendente lite hearing is not contained in the record on appeal; therefore, this court does not have before it evidence presented at that hearing on the issue of the father’s visitation with the child before the date of that hearing. We note that the trial court spoke with the child in the presence of the parties’ attorneys; the child’s statements, although transcribed, were not sworn.
The mother testified that the father had been active in the child’s life and involved in his activities before the parties divorced but that the father had done very little with the child since the parties separated. The father also admitted that he did not attend any of the child’s extracurricular baseball or basketball games or tournaments. The child is a champion wake-boarder, and, before the divorce, the father had been involved in that sport with the child. The father admitted that, although he exercised his visitation with the child at a lake house, he had taken the child wakeboarding only once or twice during the summer. The father also acknowledged that he had refused to attend any of the wakeboarding competitions in which the child had participated. The father testified that he believed that he would feel uncomfortable attending those wakeboard-ing events because the mother and some of her friends would be there.
It is undisputed that the child has never met the second wife, that he has no desire to do so, and that he does not wish to visit with the father when the second wife is present. The mother explained that the child does not want to see the second wife •because of the manner in which the parties’ marriage ended and because the child believes the second wife is the reason the father is only minimally involved in the child’s life. The mother testified that she *40 did not believe that the child should be forced to have contact with the second wife. The father testified that the child “needs to try” to visit him at his home with the second wife and the half siblings.
Although the child did not testify, he did make certain statements to the trial court. Those statements indicate that the child is hurt by what he perceives as the father’s failure or refusal to be actively involved in his life, as the father was before the parties’ divorce. The child also expressed a disinclination to meet the second wife or visit the father in her presence.
 The father argues that the trial court erred in maintaining the restriction on his visitation that specifies that the child is not to visit the father in the presence of the second wife unless the child desires to do so. With regard to reviewing a judgment resolving a dispute over visitation, this court has stated:
“““ “[Clases in Aabama have consistently held that the primary consideration in setting visitation rights is the best interests and welfare of the child. Furthermore, each child visitation case must be decided on its own facts and circumstances.” Fanning v. Fanning, 504 So.2d 737, 739 (Aa.Civ.App.1987) (citations omitted). “When the issue of visitation is determined after oral proceedings, the trial court’s determination of the issue will not be disturbed absent an abuse of discretion or a showing that it is plainly in error. Andrews v. Andrews, 520 So.2d 512 (Aa.Civ.App.1987).” Dominick v. Dominick, 622 So.2d 402, 403 (Aa.Civ.App.1993).’ ” ’
“K.B. v. Cleburne Cnty. Dep’t of Human Res., 897 So.2d 379, 387-88 (Aa.Civ.App.2004) (quoting K.L.R. v. L.C.R., 854 So.2d 124, 132 (Aa.Civ.App.2003), quoting in turn K.L.U. v. M.C., 809 So.2d 837, 840-41 (Aa.Civ.App.2001)).”
P.S. v. M.S., 101 So.3d 228, 233 (Aa.Civ.App.2012). “The trial court has much discretion in ascertaining visitation rights, and each case must stand upon its own peculiar facts and the personalities involved.” Fillingim v. Fillingim, 388 So.2d 1010, 1011 (Aa.Civ.App.1980) (citing Allen v. Allen, 385 So.2d 1323 (Aa.Civ.App.1980); Phillips v. Phillips, 53 Aa.App. 191, 298 So.2d 613 (1974); and Atkinson v. Atkinson, 45 Aa.App. 428, 231 So.2d 753 (1970)).
The father concedes that, in exceptional cases, it might not be in the best interests of a child to visit a parent. See Watson v. Watson, 555 So.2d 1115, 1116 (Aa.Civ.App.1989). He also points out that a parent cannot be denied visitation when the child is manipulated by the other parent or when the basis for the child’s refusal to visit is unreasonable. Shires v. Shires, 494 So.2d 102,103 (Aa.Civ.App.1986); see also Hagler v. Hagler, 460 So.2d 187, 189 (Aa.Civ.App.1984) (“There are circumstances where it is reasonable, equitable and to the best interest of children that they not be required to visit with a non-custodial parent because of their unwillingness or fear to do so.”). The father argues that there is evidence indicating that the child has been manipulated by the mother and that the child’s reluctance to visit in the presence of the second wife is unreasonable. Based on those arguments, the father contends that the trial court’s refusal to modify the restriction on his visitation with the child is error.
However, the trial court was presented with those arguments and rejected them. In its November 21, 2011, modification judgment, the trial court noted that the mother had interfered with the relationship between the child and the father in the past, that she had not done so since the April 2011 pendente lite hearing, and that the bond he had required the mother *41 to post would continue to ensure her compliance with its orders. As the trial court noted, “[s]ince the posting of the bond, the Mother has strictly complied with court’s previous order of visitation. The bond has worked as it was intended.” Thus, the trial court’s findings indicate that it determined that, at the time of the final hearing in this matter, the mother was no longer “hindering” the father’s relationship with the child.
Further, the trial court appears to have determined that the child’s statements indicating that he does not want to be forced to visit with the father’s new family were no less credible or valid than the father’s own explanation as to why he had refused to attend any of the child’s extracurricular activities, i.e., that the father had wanted to avoid the possibility that he might feel uncomfortable visiting the child at those events at which the mother would be present. Thus, we cannot conclude that the authority relied upon by the father demonstrates error on the part of the trial court.
More importantly, however, the facts of Watson v. Watson, supra, Shires v. Shires, supra, and Hagler v. Hagler, supra, are distinguishable from the facts of this case. In Watson v. Watson and Shires v. Shires, the father was denied visitation, and in Hagler v. Hagler the father was awarded visitation only if the children desired to visit, which, in that case, constituted an effective denial of his visitation rights. In this case, the father has not been denied visitation with the child.
Rather, the trial court denied the father’s claim seeking to modify the requirement that the child not visit him in the presence of the second wife. The father, as the party seeking to remove the restriction on his visitation with the child, had the burden of demonstrating that there had been a material change in circumstances since the entry of the divorce judgment and that the best interests and welfare of the child warrant the modification. See N.T. v. P.G., 54 So.3d 918, 920 (Ala.Civ.App.2010) (“On a petition to modify visitation, a court does not reexamine the evidence to determine if its original judgment was correct; rather, it decides whether modification is warranted based on changed circumstances.”); see also Moody v. Nagle, 811 So.2d 546, 549 (Ala.Civ.App.2001); and Flanagan v. Flanagan, 656 So.2d 1228, 1230 (Ala.Civ.App.1995). As is explained below, our review of the record supports the determination that the father did not meet his burden of proof.
In its judgment, the trial court made a number of factual findings, including the following:
“A. [T]he Father, at the final hearing on the merits of the original case, testified untruthfully about the status of his relationship with his paramour, [C.E.C.]. More specifically the Father testified, as did [C.E.C.], that they no longer had a relationship with one another nor was one desired or envisioned. The court took the Father and [C.E.C.’s] testimony into account when the original custody order was initially fashioned barring contact between the minor child of the parties ... (hereinafter ‘minor child’) and [C.E.C.]. It should be noted that the Father and [C.E.C.] later married.
B. The minor child would be caused to suffer emotionally and it would be detrimental to his well being if he were forced, against his will, to be in the presence of the Father’s new wife, [C.E.C.] (hereinafter ‘new wife’).
“C. The Father has not availed himself of every, or even the majority, of opportunities to repair his relationship with the minor child. Quite to the contrary, the Father has been forced by the new wife to pick between his new family *42 and the minor child. As a consequence, further damage has been done to his relationship with the minor child. This is regrettable, especially given the fact that the new wife was fully aware that the Father had a child when she sought to become involved with him and ultimately play a part in the demise of his marriage to the [mother].

“It should be noted that this Court has no desire to further damage the relationship of the Father and the minor child. Quite to the contrary, it is the strong desire of this court that the relationship between the Father and the minor child grow stronger and it is this court’s belief that deeds and not words are going to be the catalyst for this growth.

“The Father presently sees himself as a victim in this situation and that is unfortunate as the only real victim in the above-styled cause is the minor child of the parties for no one asked his opinion or thoughts on having his whole world turned upside down. It is the belief of this court that the sooner the Father accepts his share of responsibility in forever changing his son’s life, the sooner their relationship will begin to heal.
“D. The Defendant, [K.T.J.] (hereinafter ‘the Mother’) has in the past been detrimental to the re-establishment of a relationship between the Father and the minor child. Stated more frankly, the Mother would have been content if the Father had been awarded no visitation with the minor child. However, the court felt that it would detrimental to the minor child and quite honestly mean spirited to sever the relationship between the minor child and his father. Therefore, in an effort to thwart further efforts by the mother at hindering the father’s and minor child’s relationship, the court caused the mother to post a bond in the amount of $5,000. Since the posting of the bond, the mother has strictly complied with court’s previous order of visitation. The bond has worked as it was intended.”
(Emphasis added.)
The appropriate inquiries — and the ones utilized by the trial court — are whether the father has demonstrated the existence of a material change in circumstances and whether requiring the child to visit the father in the presence of his new wife and family would be in the child’s best interests so as to warrant a modification of the original restriction. N.T. v. P.G., supra; Moody v. Nagle, supra; and Flanagan v. Flanagan, supra; see also Gilliam v. Gilliam, 876 So.2d 1135, 1142 (Ala.Civ.App.2003) (the primary consideration in fashioning a visitation award is the best interests of the child); and Carr v. Broyles, 652 So.2d 299, 303 (Ala.Civ.App.1994) (same). The trial court witnessed the parties as they testified and spoke with the then-15year-old child. The evidence presented to the trial court indicates that the child remains hurt and resentful of the father’s conduct before the divorce, and the child expressed further anger that the father had failed to participate in activities with him or to attend any of his extracurricular activities after the divorce. It is clear both from the factual findings contained in the modification judgment and the statements the trial court made to the parties and the child about making an effort to repair the relationship of the father and the child that the trial court carefully considered the evidence and evaluated the credibility and motivations of the parties. The trial court was in the best position to evaluate the witnesses and to consider the inferences to be drawn from their testimony, regarding whether visitation that included the father’s new wife and family would be detrimental to the child. Ex parte Patronas, 693 So.2d 473, 475 (Ala.1997). This court *43 is not allowed to reweigh evidence presented to the trial court, nor may it substitute its judgment for that of the trial court. Pickett v. Pickett, 792 So.2d 1124, 1129 (Ala.Civ.App.2001). Also, this court has held:
“The trial court has broad discretion in determining the visitation rights of a noncustodial parent, and its decision in this regard will not be reversed absent an abuse of discretion. Alexander v. Alexander, 625 So.2d 433, 435 (Ala.Civ.App.1993). Every case involving a visitation issue must be decided on its own facts and circumstances, but the primary consideration in establishing the visitation rights accorded a noncustodial parent is always the best interests and welfare of the child. Fanning v. Fanning, 504 So.2d 737, 739 (Ala.Civ.App.1987).”
Carr v. Broyles, 652 So.2d at 303.
In this case, the trial court expressly stated that it wanted to help the parties improve the child’s relationship with the father but that the father’s lack of effort in that regard had caused further damage to the relationship. The evidence indicates that the changes in this case are the father’s marriage to the new wife and, as the trial court found, a further deterioration of the relationship between the father and child because of to the father’s failure to work to improve that relationship. The father presented evidence indicating that he preferred that the child visit him with his new family and that that would make visitation with the child easier for the father. The father presented no evidence concerning how visiting him in the presence of the second wife would serve the child’s best interests. Given the unique circumstances of this case, the evidence in the record on appeal, and the findings of the trial court, we cannot say that the trial court abused its discretion in determining that, given the history between the father and the child, forcing the child to visit the father solely on the father’s terms would be detrimental to the child and not in the child’s best interests.
In his brief on appeal, the father also contends that the restriction on his visitation with the child violates his constitutional rights. That restriction, however, was put in place by the trial court in the November 9, 2009, divorce judgment. “[A] modification petition cannot revive claims of error as to the judgment sought to be modified.” Jones v. Jones, 883 So.2d 207, 209 n. 1 (Ala.Civ.App.2003). Thus, the father’s failure to appeal that restriction at the time of the entry of the divorce judgment precludes this court’s review of the issues he now raises with regard to the restriction’s alleged infringement of his constitutional rights.
We note that the father argues in his brief on appeal that he and the second wife were not in a relationship at the time the divorce judgment was entered, thereby implying that there was no need, at that time, to challenge the restriction on his visitation. However, in its November 21, 2011, modification judgment, the trial court expressly determined that the father and the second wife had misrepresented the status of their relationship at the time of the divorce hearing. Given the record and the history of the parties, and applying the appropriate standard of review, we cannot say that that finding is not supported by the record.
Out of an abundance of caution, however, we note that the father could not prevail on the constitutional issues raised in this appellate brief. In his post-judgment motion, the father claimed that the trial court had violated his First Amendment right of association because he had been deprived of “his right of association with his three children and [the second] wife simultaneously.” On appeal, *44 the father seeks this court’s review of the issue whether he has been deprived of his First and Fourteenth Amendment rights to choose with whom the child will associate when the father is exercising visitation with the child. We conclude that the father’s argument on appeal is not the same argument as the argument in his post-judgment motion; therefore, his Fourteenth Amendment argument is not properly before this court. “It is well known that ‘we cannot reverse the judgment of the trial court based on an argument not made below and urged for the first time on appeal.’ Singleton v. State Farm Fire & Cas. Co., 928 So.2d 280, 285 (Ala.2005).” White Sands Group, L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1057 (Ala.2008).
The father last argues that the trial court erred because, after June 17, 2012, the father’s visitation is entirely within the child’s discretion. It is clear from the mother’s testimony that the father and the child enjoyed a good relationship before the parties divorced. The trial court acknowledged that the father loves the child and desires to continue to have a good relationship with him. However, after the parties’ divorce, the child became embittered toward the father. The child’s statements before the trial court also indicate that he was hurt by the father’s failure to communicate with him and the father’s continued refusal to attend extracurricular events that were important to the child.
However, the record also indicates that the father spends time with the child. The father has visited with the child on alternating weekends since the April 2011 pen-dente lite hearing and has made some attempts to engage the child during those visitations.[2] The father and the mother each testified that the child’s most recent visit with the father indicated an improvement in the child’s attitude toward the father and his family.
“The natural and proper relationship of a parent and child should be nurtured, encouraged and protected by the court after the breakdown of a marriage. No unreasonable impediment should be raised....
“... The responsibility for the cultivation of that relationship should rightfully be upon the father, and the mother, not upon the child. To so place it is to probably destroy it, not protect it.”
Moore v. Moore, 57 Ala.App. 735, 331 So.2d 742, 744 (Ala.Civ.App.1976); see also Parker v. Parker, 269 Ala. 299, 303, 112 So.2d 467, 471 (1959) (reversing a judgment placing visitation at the discretion of the child and stating that “a decision as to what is best for the child” should be made by the trial court rather than the child).
The record indicates that the father has made some efforts to repair his relationship with the child, that the child was responding, and that the child was willing to try to have a relationship with the father. The restriction precluding the child from unwanted visitation with the father’s new wife adequately addresses the child’s interests and encourages the repair of the child’s relationship with the father. Allowing the child to determine the timing of visitation with the father would not, given the facts, be in the child’s best interests. Accordingly, we reverse that part of the trial court’s modification judgment that allows the child to determine visitation after June 17, 2012, and we remand this cause for the entry of a judgment in compliance with this opinion.
*45 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.
THOMAS, J., concurs in part and dissents in part, with writing.

. References made by the trial court during the final hearing indicate that the mother had earlier allowed the child to determine whether, and when, he would visit the father, and the trial court addressed that issue in its May 2011 pendente lite order in which it required the mother to post a bond. It does not appear that, following the divorce, the father exercised his right to alternating weekly custody that he had been awarded in the divorce judgment.

. The father conceded that he had missed one or two visits since the April 2011 pendente lite hearing. However, those visits were missed because the father had to work or because there was a conflict with the child's schedule.